**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-00213-TWP-MJD |
| | ) | |
| CAROLYN ANDERSON, and | ) | -01 |
| TODD ANDERSON, | ) | -02 |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS COUNT 2 FOR IMPROPER VENUE**

This matter is before the Court on Defendants Carolyn Anderson and Todd Anderson's (together, the "Andersons") Motion to Dismiss Count 2 of the Superseding Indictment for Improper Venue (Filing No. 103). Count 2 of the Superseding Indictment, (Filing No. 76), alleges the Andersons conspired to import controlled substances from the United Kingdom to Arizona for distribution to various locations in the United States, including Indiana. The Andersons argue their alleged conspiracy ended when the controlled substances arrived in Arizona, so venue for Count 2 lies exclusively in the District of Arizona. The United States of America (the "Government") argues the Andersons' conspiracy continued until the controlled substances reached their final destination in Indiana, so venue is proper in this district. For the following reasons, the Court agrees with the Government and **denies** the Andersons' Motion to Dismiss Count 2.

## I. LEGAL STANDARD

The United States Constitution and the Federal Rules of Criminal Procedure require that criminal defendants be prosecuted in a district in which the charged offense occurred. U.S. Const. art. III, § 2, cl. 3 and amend. VI; Fed. R. Civ. P. 18. "'The Constitution twice safeguards the defendant's venue right': in Article III and again in the Sixth Amendment." *United States v. Orona-*

*Ibarra*, 831 F.3d 867, 872 (7th Cir. 2016) (quoting *United States v. Cabrales*, 524 U.S. 1, 6 (1998)); *see* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 "echoes the constitutional commands." *Cabrales*, 524 U.S. at 6; Fed. R. Crim. P. 18. Pursuant to the Constitution and Rule 18, the federal government may only prosecute a defendant in a district in which the charged offense was committed. U.S. Const. art. III, § 2, cl. 3 and amend. VI; Fed. R. Civ. P. 18. "For crimes that occur in more than one state or district, venue is constitutionally and statutorily proper in any district in which part of the crime was committed. Thus, the traditional rule is that a conspiracy charge may be tried in any district in which an overt act of the conspiracy occurred." *United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000) (internal citations omitted) (citing 18 U.S.C. § 3237(a); *United States v. Tingle*, 183 F.2d 719, 726 (7th Cir. 1999)).

Rule 12(b) of the Federal Rules of Criminal Procedure provides the mechanism for seeking dismissal of an indictment for improper venue, among other reasons. Fed. R. Crim. P. 12(b)(3)(A)(i). To establish proper venue, the Government must show by a preponderance of the evidence the charged offense(s) occurred in the district in which the case was brought. *United States v. Herrera-Ordones*, 190 F.3d 504, 509 (7th Cir. 1999). In deciding a Rule 12(b) motion, the Court must accept all allegations in the indictment as true and view those allegations in the light most favorable to the Government. *See id.* The Court must only consider the allegations on the face of the indictment. *See United States v. Sampson*, 371 U.S. 75, 76 (1962).

District courts use a two-part inquiry to determine whether venue is proper. *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007) (citing *Cabrales*, 524 U.S. 1). First, the court must "ascertain whether there is any statutory directive on the matter of venue." *Id.* at 652. If there is not, then the court uses the nature of the alleged offense and the location of the act(s) constituting it as a "general guide" for determining proper venue. *Cabrales*, 524 U.S. at 6; *United*

*States v. Anderson*, 328 U.S. 699, 703 (1946). There is no "single defined policy or mechanical test to determine constitutional venue." *Muhammad*, 502 F.3d at 652 (quotation marks omitted) (quoting *United States v. Reed*, 773 F.2d 477, 481 (7th Cir. 2007)).

## II. DISCUSSION

In April 2022, a Superseding Indictment brought the following charges against the Andersons: Count 1: Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1); Count 2: Conspiracy to Import Controlled Substances in violation of 21 U.S.C. § 963; and Count 4: Distribution of Morphine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant Carolyn Anderson faces additional charges of Count 3: Distribution of Morphine in violation of 21 U.S.C. § 841(a)(1) and Count 5: Distribution of Morphine in violation of 21 U.S.C. § 841(a)(1). The Andersons contend the Court should dismiss Count 2 of the Superseding Indictment for improper venue pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(i).

Count 2 alleges that between 2015 and 2020, the Andersons conspired to import poppy straw and morphine (together, "poppy pods") from a supplier in the United Kingdom to various addresses in Arizona, where the Andersons would repackage the poppy pods and ship them to purchasers in locations throughout the United States, including the Southern District of Indiana, for distribution (Filing No. 76 at ¶¶ 13–18, 37–38).

The Andersons argue there is no "statutory directive" regarding venue for Count 2. The Andersons note that neither 21 U.S.C. §§ 952 nor 963 contain a specific venue clause, and the Government does not disagree. The parties disagree as to whether the venue statute for multi-district offenses, 18 U.S.C. § 3237, governs venue for Count 2.

"Many offenses touch more than one district. For these, Congress may, consistent[] with the Constitution, authorize venue in any district where conduct that is part of the offense occurred.

This is reflected in 18 U.S.C. § 3237, which is the default venue statute." *Orona-Ibarra*, 831 F.3d 867, 872 (citations omitted). Section 3237 governs venue for offenses committed in more than one district within the United States. Section 3237(a) states:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving . . . the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such . . . imported object or person moves.

18 U.S.C. § 3237(a).

The Andersons argue their alleged conspiracy to import poppy pods took place entirely in the District of Arizona and is therefore not a continuing offense under Section 3237. They contend that importation offenses are automatically completed "when the parcels first arrive within the customs territory of the United States," so their alleged importation conspiracy was completed as soon as the poppy pods arrived in Arizona (Filing No. 104 at 5). The Government responds that an importation conspiracy may continue until the imported substances reach their final destination, which in this case is the Southern District of Indiana, so venue is proper in this district under Section 3237.

The Seventh Circuit addressed this issue in *United States v. Lawson* and decided that a conspiracy to import controlled substances may continue, for venue purposes, until the controlled substances reach their final destination. 507 F.2d 433 (7th Cir. 1974), *overruled on other grounds by United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977). In *Lawson*, the defendant was tried and convicted in the Northern District of Illinois for importing and conspiring to import cocaine in violation of 21 U.S.C. §§ 952(a) and 963. *Id.* at 435. In that case, several non-parties met with the defendant, Lawson, at his home in Jamaica, where Lawson proposed that the non-parties buy

his supply of cocaine. The non-parties agreed to buy the cocaine if Lawson would deliver it to Chicago, Illinois, which he agreed to do. Lawson gave the cocaine to his girlfriend, who "flew to Chicago by way of Baltimore," where she sold the cocaine to the non-parties. *Id.* at 435–36. Lawson was later arrested in Puerto Rico. On appeal, Lawson argued venue did not properly lie in the Northern District of Illinois because "he first entered the United States and was arrested in Puerto Rico." *Id.* at 445. The Seventh Circuit rejected Lawson's argument and found that venue was proper in the Northern District of Illinois because "the offenses were 'continued or completed'" in the Northern District of Illinois. *Id.* The *Lawson* court stated "[i]t has long been recognized that, in conspiracy cases, venue is proper, under Section 3237, in the district where the conspiracy was formed or in any district in which any overt act in furtherance of the conspiracy was committed, even though the defendant has never been present in that district." *Id.* (citing *Downing v. United States*, 348 F.2d 594, 598 (5th Cir. 1965)).

Accordingly, under *Lawson*, conspiracies to import controlled substances in violation of 21 U.S.C. § 963 are not necessarily completed once the controlled substances first arrive in the United States. Venue for importation conspiracies, like venue for other conspiracies, is proper in any district in which the defendants committed overt acts in furtherance of the conspiracy, including the act of delivering the controlled substances to their final destination. The Court recognizes that Lawson's theory of improper venue differs from the Andersons' theory. Lawson based his argument on the location of his arrest and not, for example, the location where the cocaine first arrived in the United States (Baltimore, Maryland). But that difference does not affect the Seventh Circuit's rationale as to why venue was proper in the Northern District of Illinois, and it does not make Lawson inapplicable to this case. Count 2 of the Superseding Indictment

therefore alleges a multi-district offense, and venue is proper in the Southern District of Indiana under Section 3237.[1]

The Court's conclusion is consistent with the language of Section 3237(a), which anticipates that imported objects may move "from, through, or into" various districts in the United States, and permits the prosecution of importation offenses in "any" of those districts. 18 U.S.C. § 3237(a). If the Andersons were correct that importation offenses are completed the moment an imported object first arrives in the United States, then that imported object would only ever arrive "into" one district and would never move "from" or "through" any other district. The Andersons' position would therefore nullify the second sentence of Section 3237(a). *See United States v. Salamone*, No. 16-0259, 2017 WL 957371, at *2, n.1 (S.D. Ala. Mar. 10, 2017) ("Salamone asserts, with no citations to authority, that '[a]ny importation was complete once a defendant allegedly walked across the Mexican border into Arizona.' . . . [F]undamentally, as a matter of federal statute, the importation would not have been complete at that moment for jurisdictional purposes. Defendant's argument would erase the plain language of § 3237(a)." (citations omitted) (citing 18 U.S.C. § 3237)).

The Court finds further support in two analogous Seventh Circuit cases cited by the Government: *United States v. Molt*, 772 F.2d 366 (7th Cir. 1985), *cert. denied*, 475 U.S. 1081 (1986), and *United States v. Morrison*, 946 F.2d 484 (7th Cir. 1992), *cert. denied*, 506 U.S. 1039 (1992). In *United States v. Molt*, the defendant, Molt, was convicted in the Northern District of Indiana on charges of conspiracy to import and conspiracy to possess with intent to distribute

[1] The Court is not deciding whether any other importation offenses, like importation of controlled substances in violation of 21 U.S.C. § 952, are automatically completed once the controlled substances first arrive in the United States. The Court's ruling is limited to the offense of conspiracy to import controlled substances in violation of 21 U.S.C. § 963.

marijuana and cocaine. 772 F.2d at 367. The co-conspirators in *Molt* flew marijuana and cocaine from Colombia to the Bahamas. The drugs were then flown to Florida or Georgia, where "[o]ther participants would transport the drugs to Northern Indiana for distribution there and in Chicago." *Id.* at 367–68; *see United States v. Markowski*, 772 F.2d 358, 360 (7th Cir. 1985) (describing same smuggling operation). Molt's role in the smuggling operation took place exclusively in the Bahamas. *Molt*, 772 F.2d at 368. On appeal, Molt argued that the jury erroneously found that the smuggling operation constituted one large conspiracy instead of several smaller conspiracies, and that venue was improper in the Northern District of Indiana because the smaller conspiracies in which he participated were completed before the drugs were transported to Indiana. The Seventh Circuit disagreed with Molt on both accounts. The court held that the jury "easily could have found" that the smuggling operation was one conspiracy and stated that "[t]he conclusion that there was but one conspiracy disposes of Molt's . . . argument about venue." *Id.* The court explained that "[v]enue is proper in any district where an 'offense was begun, continued, or completed" under Section 3237, and "[a]s long as one overt act in furtherance of the conspiracy was committed in a district, venue is proper there." *Id.* "[T]he evidence establishe[d] several overt acts in the Northern District of Indiana, the northern terminus of the smuggling operation," including evidence that "[t]he drugs ultimately were transported into the district," so venue was proper. *Id.* at 370. In this case, the Andersons allegedly conspired to import poppy pods from the United Kingdom, through Arizona, and ultimately into Indiana, and they allegedly transported the poppy pods to the Southern District of Indiana in furtherance of their conspiracy. Venue is therefore proper in this district.

In *United States v. Morrison*, the defendants were tried and convicted in the Eastern District of Wisconsin on several charges, including conspiracy charges, related to their importation and distribution of cocaine and marijuana. 946 F.2d at 489. The defendants in *Morrison* would fly

cocaine and marijuana from Panama and Jamaica to Puerto Rico, where other defendants would pick up, repackage, and ship the drugs to Milwaukee, Chicago, and other places. *Id.* at 488–89. One of the defendants moved to transfer venue to Puerto Rico under Federal Rule of Criminal Procedure 21(b), arguing that "his participation in the drug ring's import operations occurred solely in Puerto Rico." *Id.* at 489. The district court denied the motion, and the Seventh Circuit affirmed the denial, stating that although "the majority of the conspiracy's activities took place in Puerto Rico . . . given the countervailing considerations [for venue in Wisconsin] and the fact that the drug ring did indeed distribute some of the drugs it imported in Milwaukee, we cannot say the facts 'compelled' the transfer'" to the District of Puerto Rico. *Id.* at 489–90 (emphasis added). The Andersons argue *Morrison* is inapplicable because it involved a motion to transfer venue and not a motion to dismiss. But regardless of *Morrison*'s disposition, the Seventh Circuit's rationale in *Morrison* supports the conclusion that venue for an importation conspiracy offense is proper in the district in which the imported substances were ultimately delivered.

The Andersons contend that *Molt* and *Morrison* are distinguishable because "they both involved a single conspiracy surrounding a drug smuggling operation," and in this case, the Superseding Indictment alleges "that the Andersons conducted separate conspiracies": one conspiracy to import poppy pods from the United Kingdom to Arizona; and a second conspiracy to distribute the poppy pods from Arizona to other locations, including Indiana (Filing No. 125 at 3–4). The Court disagrees for two reasons. First, the allegations in Count 2 do not relate exclusively to the Andersons' alleged importation from the United Kingdom to Arizona. As the Government notes, Count 2 incorporates by reference allegations from Count 1 that describe the Andersons' alleged conspiracy to ultimately transport the poppy pods to Indiana (Filing No. 104 at 1 (citing Filing No. 76 at ¶¶ 13–18); Filing No. 76 at ¶ 39; Filing No. 118). Second, "whether

there [is] one conspiracy or many is a question of fact for the jury's determination." *Molt*, 772 F.2d at 369 (citing *United States v. Schmucker-Bula*, 609 F.2d 399, 403 (7th Cir. 1980)) (declining to set aside jury's decision that each importation was a separate conspiracy and rejecting improper venue argument, which was based on existence of separate conspiracies). The defendant in *Molt*, like the Andersons, argued the evidence showed several conspiracies instead of one, but the Seventh Circuit concluded that only the jury could decide whether one or multiple conspiracies existed. *Molt*, 772 F.2d at 369.

If, at trial, the Andersons believe the Government fails to offer sufficient evidence showing the conspiracy's connection to this district, then they may reassert their venue challenge at that time. But the Court cannot determine at this stage that the Government has failed to prove a single conspiracy and, as a result, failed to prove venue. *See United States v. Valle*, No. 1:14-cr-135, 2015 WL 4994502, at *6 (E.D. Va. Aug. 18, 2015) (denying pretrial motion to dismiss charges for conspiracy to smuggle cocaine through Honduras to United States for distribution in Eastern District of Virginia; rejecting argument that Government alleged several conspiracies and failed to prove venue; stating arguments were "premature," "given that no trial ha[d] occurred and no evidence ha[d] been adduced").

The Seventh Circuit's decisions in *Lawson*, *Morrison*, and *Molt* are also consistent with decisions from several other federal courts that have addressed this issue. *See United States v. Jackson*, 482 F.2d 1167 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159 (1974) (finding District of Colorado was proper venue for charges of importation and conspiracy to import heroin from Thailand to California and then ultimately to Colorado; rejecting the argument that "the offense was completed the moment the smuggling attempt was discovered in California and thus does not continue to the smuggling attempt's destination point in Colorado;" and stating "[a]dmittedly a

crime was committed the moment the heroin package entered the United States, but the discovery of the crime in California did not exhaust it. . . . It was a continuous crime which received no finality until the package arrived [in Colorado]."); *United States v. Reynolds*, 511 F.2d 603 (5th Cir. 1975) ("[A] conspiracy to import illicit drugs does not automatically terminate when the substance crosses the border."); *United States v. Haire*, 371 F.3d 833 (D.C. Cir. 2004), *vacated & remanded*, 543 U.S. 1109 (2005), *opinion reinstated*, No. 02-3009, 2005 WL 3279991 (D.C. Cir. July 22, 2005) (affirming conviction on drug conspiracy charges under 21 U.S.C. §§ 846 and 963 for transporting cocaine from Mexico to Florida and then ultimately to District of Columbia; concluding reasonable jury could find only one conspiracy existed and defendant could be tried in District of Columbia despite only ever transporting cocaine from Mexico to Florida); *United States v. Hicks*, 420 F. Supp. 533, 535–36 (N.D. Tex. 1976) (denying motion to dismiss for improper venue and rejecting argument that charges of "importation of narcotics[] are not continuing crimes, but were complete when the narcotics arrived ashore and were opened" so "venue is proper only in those districts where the narcotics arrived, not the Northern District of Texas where the alleged conspiracy to import and distribute the narcotics occurred and to which the narcotics allegedly eventually traveled"; "[B]y statute Congress has defined this crime as a 'continuing' one . . . [and] provided that prosecution may be had in 'any district from, through . . . which such commerce . . . moves.'"); *Salamone*, 2017 WL 957371, at *2, n.1.

The authority the Andersons cite does not persuade the Court that venue is improper. The Andersons rely on the definition of "import" under 21 U.S.C. § 951–952 and the Seventh Circuit's decision in *United States v. John*, 518 F.2d 705 (7th Cir. 1975).

The Andersons contend that 21 U.S.C. §§ 951 and 952 show that "[a]n importation offense is completed when the parcels first arrive within the customs territory of the United States" (Filing

No. 104 at 5). Upon a closer reading of Sections 951 and 952, the Court disagrees. Section 952(a) makes it unlawful (1) "to *import* into *the customs territory* of the United States from any place outside thereof (but within the United States); or (2) or to *import* into the United States from any place outside thereof, any controlled substance." 21 U.S.C. § 952(a) (emphasis added). Section 951(a) defines "import" as "any bringing in or introduction of [an] article into any area" and defines "customs territory of the United States," by reference, as the fifty States, the District of Columbia, and Puerto Rico. 18 U.S.C. § 951(a); *see* Harmonized Tariff Schedule of the United States, General Note 2, https://hts.usitc.gov/current; 19 U.S.C. § 1202. When read together, Sections 951(a) and 952(a) make it unlawful (1) to bring in or introduce a controlled substance "into *any area*" in the fifty States, the District of Columbia, or Puerto Rico from any other place within the United States (*e.g.*, Guam, the Virgin Islands, American Samoa); or (2) to bring in or introduce a controlled substance "into *any area*" in the United States from any other place. 21 U.S.C. § 951(a)(1) (emphasis added); *see* 21 U.S.C. § 387(22) (defining "United States"). Neither statutory section describes where an importation is completed or limits the phrase "any area" to the area where an imported article first arrives in the United States. Sections 951 and 952 therefore do not support the Andersons' position.

The Andersons also cite *United States v. John*, 518 F.2d 705 (7th Cir. 1975), in which the defendant raised the same venue arguments that the Andersons raise as to his convictions for importation of controlled substances. *John*, 518 F.2d at 707 (7th Cir. 1975). In *John*, the defendant, John, mailed several packages of marijuana from Nigeria to Chicago. Some of the packages arrived in Chicago while others were intercepted in transit by customs officials in New York. *Id.* John was charged, in part, with six counts of importing marijuana in violation of 21 U.S.C. § 952. *Id.* at 707. One of the charges pertained to the packages that reached Chicago (the

"Chicago charge"), and the other five charges pertained to the packages seized in New York (the "New York charges"). John was tried and convicted on all six counts in the Northern District of Illinois. On appeal, he argued venue was improper because "the crime of importation was completed when the mailed packages first reached the shores of the United States." *Id.* at 709. The Seventh Circuit upheld John's conviction on the Chicago charge but reversed his convictions on the New York charges. However, the Seventh Circuit's rationale in *John* is not applicable here.

The Seventh Circuit upheld John's conviction on the Chicago charge because John's improper venue challenge as to that charge was untimely. The court explained that "assum[ing] arguendo . . . that the crime of importation was completed when the mailed packages first reached the shores of the United States, which, of course, was elsewhere than inland Illinois, the basis for the objection was apparent on the face of the indictment," [2] and John was required to assert that challenge before the close of the Government's case. *Id.* at 708–09. The Seventh Circuit expressly stated that it was not deciding whether the alleged importation was a continuing offense under Section 3237, although it noted that "[d]ecisions in at least two other circuits indicate the applicability of this statute and that venue would be proper in the Northern District of Illinois at least to any package which arrived in the district." *Id.* at 709, n.2 (citing *United State v. Jackson*, 482 F.2d 1167 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159 (1974); *United States v. Barnard*, 490 F.2d 907, 911 (9th Cir. 1973), *cert. denied*, 416 U.S. 595 (1974)).

The court reversed John's conviction on the New York charges for failure to prove venue because the packages at issue "were seized and not permitted to proceed on to their intended

[2] The Andersons argue that the Seventh Circuit "seemed inclined to find the indictment facially invalid as to the importation counts because, 'access to [the Northern District of Illinois] via the mails without prior passage through other areas of the United States would have been impossible'" (Filing No. 104 at 5 (quoting *John*, 518 F.2d at 709)). The Court disagrees. When read in context, the Seventh Circuit's explanation about Illinois' geography served only to explain why John's objection was apparent on the face of the indictment, not to suggest that the indictment might be facially invalid.

destination" of Chicago. *Id.* at 709. The court's reversal was therefore based on the imported packages' absence from their final destination (Chicago), not their arrival at their initial destination (New York). *John* therefore does not support the argument. Moreover, *John* involved only the offense of importation under 21 U.S.C. § 952, not conspiracy to import under 21 U.S.C. § 963 (Filing No. 118 at 5). Even if *John* could be read to limit Section 3237's application to substantive importation charges, *Lawson* would remain the controlling decision on Section 3237's application to importation conspiracy charges.

As a final matter, the Court will briefly address concerns raised in the Andersons' Reply about notice, double jeopardy, and prosecutorial forum shopping (Filing No. 125 at 2–3). They first contend, without support, that if the Court adopts the Government's position as to venue, then "the Andersons could face prosecution in any district in which the alleged controlled substances were mailed by ground transportation," which would violate the Andersons' Sixth Amendment rights and deprive them of "fair notice of where they could potentially face prosecution" (Filing No. 125 at 3). However, the Court's ruling still restricts venue for Count 2 to those districts in which the Andersons allegedly committed overt acts in furtherance of their alleged conspiracy, and still requires that the Superseding Indictment contain allegations establishing venue, which serve to notify the Andersons as to why they are being prosecuted in this venue.[3] *United States v. Bohle*, 445 F.2d 54, 59 (7th Cir. 1971), *overruled on other grounds by United States v. Lawson*, 653 F.2d 299, 301 (7th Cir. 1981) ("An indictment alleges proper venue when it alleges facts which, if proven, would sustain venue."). The Court's ruling does not run afoul of the Andersons' venue rights.

[3] The Andersons argue they are entitled to fair notice as to "where they could *potentially* face prosecution," (Filing No. 125 at 3 (emphasis added)), but they offer no authority supporting the contention that defendants are entitled to notice as to where they might be prosecuted.

Next, the Andersons argue they may "face prejudice as to double jeopardy concerns" because "any district could potentially prosecute the Andersons under the Government's theory if a third-party shipping truck moved the alleged controlled substances through that district." (Filing No. 125 at 3.) Neither the Government nor the Court has suggested that the Government may re-prosecute the Andersons in each district where venue is proper. The Andersons may be prosecuted only once for the offense described in Count 2. However, if venue for Count 2 is proper in more than one district, then the Government may choose any one of those districts in which to pursue its prosecution without implicating the Double Jeopardy Clause.

Last, the Andersons complain that application of Section 3237 to importation offenses will lead to "prosecutorial forum shopping". (Filing No. 125 at 3.) The Andersons do not contend that the Government engaged in improper forum shopping in this case, but "[t]o the extent that [forum shopping] is a concern in a given case, it is more appropriately handled . . . by a transfer to a more reasonable forum, pursuant to Fed. R. Crim. P. 21." *Andrews v. United States*, 817 F.2d 1277, 1279–80 (7th Cir. 1987); *see* (Filing No. 102 (Motion to Transfer Venue)). None of the Andersons' concerns raised in their Reply warrant dismissal of Count 2.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Andersons' Motion to Dismiss Count 2 for Improper Venue (Filing No. 103).

**SO ORDERED.**

Date: 11/18/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Austin Andreas
KEFFER HIRSCHAUER LLP
andreas@indyjustice.com

Bradley A. Keffer
KEFFER HIRSCHAUER LLP
keffer@khindy.com

Abhishek Kambli
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
abhishek.kambli@usdoj.gov

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kendra.klump@usdoj.gov