UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-00213-TWP-MJD |
| | ) | |
| CAROLYN ANDERSON, | ) -01 | |
| TODD ANDERSON, | ) -02 | |
| | ) | |
| Defendants. | ) | |

## ENTRY REGARDING RULE 404(b) NOTICE

This matter is before the Court on Plaintiff the United States of America's (the "Government") Notice of Intent to Offer Evidence at Trial and Motion in *Limine* (the "Notice") ([Filing No. 140](Filing No. 140)). Defendants Carolyn Anderson ("Carolyn Anderson") and Todd Anderson ("Todd Anderson") (together, the "Defendants") are scheduled for a jury trial on March 13, 2023. The Government seeks to offer evidence regarding: (1) a 2013 search by federal agents of the Defendants' properties in Arizona and a related 2015 Collateral Forfeiture Agreement executed by Todd Anderson (the "Forfeiture Agreement"); (2) a 2015 application submitted on behalf of one of the Defendants' companies to become a Drug Enforcement Agency ("DEA") registered importer of opium poppy and/or poppy straw (the "2015 Application"); (3) controlled purchases of opium poppy and/or poppy straw in 2019 and 2020; (4) the August 2020 seizure of poppy straw from the Defendants' properties in Arizona; and (5) the August 2020 seizure of documents from the same properties. For the following reasons, the Notice is **approved in part and disapproved in part**, and the incorporated Motion in *Limine* is **granted in part and denied in part**.

## I.  BACKGROUND

The Second Superseding Indictment, filed February 3, 2023, charges the Defendants with Count 1: Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances; Count 2: Conspiracy to Import Controlled Substances; and Count 4: Distribution of a Controlled Substance. ([Filing No. 150](#)). Carolyn Anderson is charged also with Count 3 and Count 5: Distribution of a Controlled Substance. *Id*. The Government alleges the Defendants conspired to import and distribute opium poppy and/or poppy straw--both of which contain detectable amounts of morphine--and subsequently distributed those substances to several states, including Indiana.

In its Notice, the Government seeks to offer five types of evidence. First, it seeks to offer evidence related to the execution of search warrants on the Defendants' properties in 2013, and Todd Anderson's subsequent execution of a Forfeiture Agreement in 2015 arising from the searches. Second, the Government seeks to offer evidence regarding the Defendants' company's Application to become a DEA registered importer of opium poppy and/or poppy straw, including statements purportedly made by Todd Anderson during the application process. Third, the Government seeks to offer evidence regarding several controlled purchases involving the Defendants in 2019 and 2020. Fourth, the Government seeks to offer evidence related to the seizure of poppy straw from the Defendants' properties during the execution of a search warrant. And fifth, the Government intends to offer evidence related to documents seized in the execution of the same warrant.

## II.  LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b)(2) allows evidence of a crime, wrong, or other act when it is used "for another purpose, such as proving

2

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012).

Rule 404(b)'s prohibition does not apply to direct evidence of the crimes charged and is subject only to Rule 401's relevancy requirements and Rule 403's balancing test. *United States v. Ferrell*, 816 F.3d 433, 442–43 (7th Cir. 2015); *United States v. Gorman*, 613 F.3d 711, 718 (7th Cir. 2010). Evidence is direct evidence when it tends to prove the elements of the charged offense. *United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012).

### III.    DISCUSSION

In its Notice of its intent to offer evidence of five events, the Government requests a pretrial finding of the admissibility of such evidence. The Court will discuss each type of proffered evidence in turn.

**A.    2013 Searches and 2015 Forfeiture Agreement**

In 2013, DEA agents searched and seized certain items of property belonging to Todd Anderson. This search and subsequent seizure were of a series of decorative, dried flower items as well as firearms and a small amount of marijuana. (Filing No. 163 at 2.) No charges were filed against Todd Anderson for possession or distribution of poppy straw, and whether the decorative dried flowers were legal to possess was a contested matter by Todd Anderson. Todd Anderson

reached a Forfeiture Agreement with the Government, in which he agreed to allow the Government to seize and forfeit items of property. *Id*. The Government argues that evidence related to the 2013 search of the Defendants' Arizona properties and the Forfeiture Agreement are direct evidence of the charged offenses.

The Government contends that to prove each of the crimes charged, it must show the Defendants knew that the substances they were allegedly importing and distributing were or contained some kind of controlled substance. The Government seeks to show the Defendants' knowledge by showing that they knew the controlled substance's identity, or that they knew the substance was or contained a controlled substance, despite not knowing its identity. *McFadden*, 576 U.S. 186, 188–89 (2015); *see United States v. Mire*, 725 F.3d 665, 674 (7th Cir. 2013). The Government argues the Defendants' knowledge and intent will be one of the primary issues in this case, and evidence regarding that knowledge and intent therefore has particularly high probative value. *See United States v. Gomez*, 763 F.3d 845, 859 (7th Cir. 2014) ("[T]he degree to which the non-propensity issue actually is contested may have a bearing on the probative value of the other-act evidence.").

The Defendants respond that this proffered evidence should not be admissible for several reasons. First, they argue that the Forfeiture Agreement does not "conclusively identify" the items seized as poppy straw, so it does not evidence the Defendants' knowledge that opium poppy and poppy straw are controlled substances ([Filing No. 163 at 3](Filing No. 163 at 3)). The document instead identifies six types of property that were seized: "poppy straw, poppy pods, opium poppy, *and/or . . . substances that appeared to be poppy straw, poppy pods, and or/opium poppy*" ([Filing No. 140-1 at 2](Filing No. 140-1 at 2)) (emphasis added)). Defendants argue the Forfeiture Agreement "does not amount to an admission by Defendant Todd Anderson that the items seized were in-fact poppy straw" or that "the items

4

seized were in any way illegal to possess" (Filing No. 163 at 3). They believe that introduction of this evidence would improperly imply that the seized items were illegal and would confuse the jury about whether criminal conduct occurred.

      This argument is misplaced. The Government intends to use evidence of the 2013 seizures and Forfeiture Agreement to prove the Defendants knew that opium poppy and poppy straw were controlled substances, not that they previously possessed those substances. It makes no difference whether the substances seized in 2013 and referred to in the Forfeiture Agreement were in fact opium poppy or poppy straw because the proffered evidence still shows that the Defendants knew that federal agents seized the substances because they appeared to be opium poppy and/or poppy straw. The proffered evidence related to the 2013 searches and Forfeiture Agreement is therefore direct evidence of the Defendants' knowledge, it is admissible evidence and Rule 404(b) does not apply.

      Second, the Defendants argue that portions of the Forfeiture agreement are irrelevant and highly prejudicial because they refer to offenses related to firearms and marijuana possession, which are not at issue here (Filing No. 163 at 4). This argument is well taken. The Government does not explain how references to these unrelated offenses are direct evidence of the charged offenses or serve any non-propensity purpose. Admission of the portions of the Forfeiture Agreement referring to firearms and/or marijuana would be unfairly prejudicial. Accordingly, these limited portions should be redacted from the Forfeiture Agreement, and the remaining portions may still be offered as direct evidence.

      Third, the Defendants argue the Forfeiture Agreement, by referring to the Government's agreement not to file charges "for any poppy straw, poppy pods, and/or opium poppy located during the service of search warrants," improperly implies that the items seized were in fact illegal,

that a crime had been committed, that Todd Anderson knew he had committed a crime, and that he was forfeiting items because he knew they were illegal to possess (Filing No. 163 at 5). The Defendants contend the proffered evidence is thus highly prejudicial and would confuse the jury with respect to the standard of evidence needed to bring charges, versus the standard of evidence needed to find guilt. The Court is not persuaded. The Court finds that the risk of unfair prejudice does not substantially outweigh the evidence's probative value as direct evidence. As the Defendants note, the Forfeiture Agreement states that it "is not an admission of guilt," and does not state that actual controlled substances were seized or that any wrongdoing occurred (Filing No. 163 at 3; Filing No. 140 at 12). And although there is still some risk that the jury would infer that the substances seized were in fact controlled substances, or that charges could have been filed, a limiting instruction can cure this risk.

    Fourth, the Defendants argue that the proffered evidence does not pertain to Carolyn Anderson at all, as she was neither a party nor a signatory to the Forfeiture Agreement, and the evidence is therefore wholly prejudicial to her. At this time, the Court is unable to determine what probative value this evidence would have as to Carolyn Anderson. It is possible that Carolyn Anderson had knowledge of the 2013 searches and the Forfeiture Agreement despite not having signed the Agreement, particularly in light of the fact that the Defendants are married, own the same properties, and operate businesses together. It is also possible that she did not have knowledge, and Defendants' counsel will be able to cross-examine the offering witness on this issue. The Court therefore conditionally approves this portion of the Government's Rule 404(b) Notice as to Carolyn Anderson. If and when the Government offers this proffered evidence against Carolyn Anderson, she may re-raise her objection under Rule 404(b).

The Defendants lastly argue that the proffered evidence does not show a lack of mistake by the Defendants and instead attempts to "draw the forbidden inference" that the Defendants had a propensity to illegally deal in and import controlled substances. The Court agrees with the Defendants that the proffered evidence cannot be used to show that the Defendants were "*once again* found *illegally* dealing and importing" controlled substances, since the proffered evidence only shows past potential criminal conduct, not actual criminal conduct (Filing No. 140 at 11 (emphasis added)).  However, the Court agrees with the Government that under Rule 404(b), the proffered evidence shows a lack of mistake.  It shows that the Defendants knew that opium poppy and poppy straw were controlled substances and therefore did not mistakenly believe that the alleged opium poppy and/or poppy straw at issue were not controlled substances.  Although the proffered evidence is direct evidence and therefore need not be admissible under Rule 404(b), it serves a permissible non-propensity purpose.  But for the reasons explained above, the Court finds that the risk of unfair prejudice arising from this evidence does not substantially outweigh its probative value.

The Court **approves in part and disapproves in part** this portion of the Government's Notice. The Government may offer the proffered evidence regarding the 2013 searches and Forfeiture Agreement as direct evidence, except that the Government must redact any and all references to firearms and marijuana from the Forfeiture Agreement, and that at trial, Carolyn Anderson may re-raise her objection under Rule 404(b) if and when this evidence is offered against her.

B.     **2015 Application to Become a DEA-Registered Importer**

In 2015, the Defendants sought and then subsequently abandoned the pursuit of a DEA import license. (Filing No. 163 at 6.)  This decision by the Defendants to seek the license was initially to avoid further harassment by the DEA, which had seized otherwise lawfully possessed

7

property in 2013. *Id*. According to Defendants, "due to the cost associated with such a request, the difficulties experienced by the Defendants in dealing with the DEA, and the ultimate recognition that such a license was unnecessary, as it was concluded that it did not apply to the product that they were seeking to import (namely, dried flowers for decorative purposes), the Defendants ultimately withdrew from this process before a final adjudication occurred. *Id*.

The Government seeks to offer evidence regarding the 2015 Application submitted by the Defendants' company to become a DEA-registered importer of poppy straw. The Court begins by noting that much of the evidence related to the 2015 Application does not appear to be evidence of any prior bad act by the Defendants. Their decisions to submit an application and to subsequently withdraw it appear to be lawful. And most of the statements purportedly made by Todd Anderson similarly appear to be neutral and not indicative of any prior bad act. (Filing No. 140 at 4 ("Todd identified countries from which the defendants' business, Whatever LLC, intended to import opium poppy and/or poppy straw. . . . Todd proffered a stipulation that '[t]he poppy seeds [of Papaver SPP] that are not regulated contain the same listed controlled substances as the Dried Seed Pods of Papaver SPP'").) This evidence is therefore not governed by Rule 404(b) and its admissibility should be resolved in the context of trial.

Rule 404(b) appears to apply only to certain statements made by Todd Anderson during the application process that referred to his prior sales of poppy and/or poppy straw. *Id.* at 4, 5 ("Todd also told the investigators that he had been selling dried opium poppy straw and/or poppy straw for about 18 months, but once he learned that the DEA regulated poppy straw, he stopped selling and importing it. . . . DI Vo asked whether Todd had any experience with handling of controlled substances. The same day, Todd replied, '[B]ecause the dried poppy pods are considered a controlled substance the answer could be yes. If we remove the dried poppy pods from the

equation the answer is no"). The Government argues that this evidence of prior bad acts is direct evidence of the Defendants' knowledge that poppy straw is a controlled substance. The Court agrees. Like the evidence regarding the 2013 searches and Forfeiture Agreement, the evidence related to the 2015 Application are direct evidence of the Defendants' knowledge that poppy straw is a controlled substance.

In their response, the Defendants argue that this proffered evidence would lead the jury to draw several "inappropriate inferences," including: "that because Defendants sought a license that the items that they were intending to import with it were items that were otherwise illegal to possess, and they had no other motivation for seeking such a license"; "[t]hat because of seeking the license, the Defendants were therefore 'on notice' that these items were illegal to possess"; and "that those items that were intended by the Defendants in 2015 to be the subject of the license were the exact same items that were seized by the Government in 2019 and 2020" (Filing No. 163 at 6). However, the Government has not stated that it intends to use the proffered evidence to draw any of those inferences. The limited purpose for which the Government intends to offer this evidence is to show that the Defendants knew that poppy straw is a controlled substance. Moreover, as the Court has already concluded, much of the proffered evidence regarding 2015 Application does not fall within the scope of Rule 404(b). Objections regarding the admissibility of this non-404(b) evidence should be resolved in the context of trial.

The Defendants add that this proffered evidence would confuse the jury by placing collateral issues regarding the regulatory and licensing process before the jury (Filing No. 163 at 7). The Court does not agree. The probative value of the proffered evidence outweighs the risk of undue prejudice. The Government has not indicated that it intends to delve into the minutia of the licensing procedures, and the Court will not allow it to do so. The Government has stated that

9

it intends to use this evidence only to prove the Defendants' knowledge that opium poppy and poppy straw were controlled substances and has confirmed that its introduction of this evidence "will be limited and not take long at trial" (Filing No. 140 at 12). Additionally, a proper limiting instruction will alleviate the concern of potential jury confusion and focus the jury's attention on the statements made during the licensing process, rather than the licensing process itself. The probative value of the evidence of the 2015 Application is not substantially outweighed by the risk of any unfair prejudice.

**C.      2019 and 2020 Controlled Purchases**

The Government next proffers evidence regarding several controlled purchases of poppy pods in October 2019 and August 2020, including evidence of the investigation leading to the controlled purchases. The argument section of the Government's Notice does not include much explanation as to why this evidence is direct evidence or otherwise admissible under Rule 404(b). Nonetheless, the Court reads the Government's Notice as contending that all of the proffered evidence mentioned in the motion is direct evidence, so the Court will consider whether it is direct evidence.

The Defendants contend that this proffered evidence is prohibited character evidence and only serves to "set[] the scene" for the charged offenses. They argue that "[e]vidence that explains 'why' a criminal investigation began is of limited probative value" (Filing No. 163 at 8). Although the Defendants cite no caselaw in support of this argument, the Court notes that the Seventh Circuit has "'expressed concerns before' about using other-act evidence merely to '[c]omplete the story', for that is 'not one of the permissible non-propensity uses'" the Seventh Circuit has endorsed under Rule 404. *United States v. Lowe*, 2 F.4th 652, 656 (7th Cir. 2021) (alterations in original) (quoting *United States v. Nelson*, 958 F.3d 667, 670 (7th Cir. 2020)).

10

However, based on the Court's review of the Notice and the Second Superseding Indictment, the controlled purchases referenced in the Notice appear to be the same controlled purchases charged in Count 1 of the Second Superseding Indictment as acts in furtherance of the alleged distribution conspiracy and include the three controlled purchases charged in Counts 3, 4 or 5 as distribution of a controlled substance (Filing No. 140 at 6; Filing No. 150 at ¶¶ 19–36).

The proffered evidence of the controlled purchases is therefore direct evidence of the charged distribution conspiracy. *See United States v. Adams*, 628 F.3d 407, 414–15 (7th Cir. 2010) (finding district court did not abuse discretion in allowing evidence of defendant's prior arrests as direct evidence of charged drug distribution conspiracy; "[I]f the evidence is admitted as direct evidence of the charged offense, Rule 404(b) is not applicable. Specifically, evidence directly pertaining to the defendant's role in a charged conspiracy is not excluded by Rule 404(b)."); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) (finding district court did not commit plain error in admitting evidence of gang membership as evidence of charged drug conspiracy; "The contested evidence proved specific portions of the indictment. It did not concern 'other crimes, wrongs or acts,' but it concerned the charged crime. When evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis."); *United States v. Johnson*, 137 F.3d 970, 974 (7th Cir. 1998) ("Without delving into the details of this doctrine, it is adequate to note that the controlled buys were not unrelated criminal conduct—they constituted direct evidence of the distribution conspiracy charged in the indictment and circumstantial proof of Johnson's intent to distribute cocaine in his possession.").

The Defendants raise the concern that unfair prejudice will result from the evidence of the controlled purchases because the alleged other acts are criminal in nature and are of a similar character and type to certain charged conduct (Filing No. 163). The Court concludes that any risk

11

of unfair prejudice does not substantially outweigh the probative value of this evidence. The probative value of the evidence of the controlled purchases is extremely high because it provides direct evidence of the charged distribution conspiracy and alleged distributions. *United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994) ("[T]he more probative the evidence, the more the court will tolerate some risk of prejudice . . . ." (alteration in original)). Additionally, because the Defendants are also charged with several counts of distribution of a controlled substance, the jury will already be exposed to evidence of controlled purchases, so some additional similar evidence is not likely to prejudice the Defendants as to the conspiracy count any more than what could arise from the evidence of the charged controlled buys. A proper limiting instruction will alleviate this concern of potential prejudice and a limiting instruction can cure the potential that a jury would view this evidence as propensity evidence of the three distribution charges. The Court concludes that the probative value of the evidence of the 2019 and 2020 controlled purchases is not substantially outweighed by the risk of any unfair prejudice.

      The Defendants also argue that the Court should only admit the evidence of the 2019 and 2020 seizures if the Government lays a proper foundation for the evidence, and that admissibility should not be determined on a motion *in limine* ([Filing No. 163 at 8](Filing No. 163 at 8)). The Defendants appear to misunderstand the scope of the Government's Rule 404(b) Notice and accompanying Motion *in Limine*, which only seek a ruling as to whether Rule 404(b) precludes the proffered evidence, not whether that evidence will be admissible. Rule 404(b) is a rule of inadmissibility, not admissibility. "[I]t says that evidence 'may' be admissible for a given purpose, not that it is automatically admissible." *United States v. Jones*, 455 F.3d 800, 810 (7th Cir. 2006) (Easterbrook, J., concurring); *see United States v. Simpson*, 479 F.3d 492, 497 (7th Cir. 2007) ("Rule 404(b) is first a rule of prohibition . . . ."). An order approving the Notice would therefore not hold that the

proffered evidence is admissible, but only that it is not prohibited by Rule 404(b). Further, although "motions in *limine*" are often used by parties to determine the admissibility of evidence ahead of trial, that is not always their purpose. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (using the term "*in limine*" "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"). Here, the Motion *in Limine* incorporated into the Notice only seeks a pretrial ruling on the application of Rule 404(b).

The Defendants' arguments regarding foundation, authenticity, hearsay, and other evidentiary objections are therefore inapposite here, but the Defendants may raise those evidentiary objections in the context of trial. The Court **approves** this portion of the Government's Notice.

**D.    August 2020 Seizure of Poppy Straw**

The Government also proffers evidence related to the August 2020 seizure of poppy straw from properties purportedly owned by the Defendants (Filing No. 140 at 6–7). The seized poppy straw, like the evidence of the controlled purchases, is "embraced" by the conspiracies alleged in the Second Superseding Indictment and is therefore direct evidence of the charged conspiracies. *See Adams*, 628 F.3d at 414–15; *Alviar*, 573 F.3d at 538.

The Defendants do not argue that the seized poppy straw is not direct evidence of the charged offenses or otherwise inadmissible under Rule 404(b). They instead focus their objections to the evidence of the August 2020 seizure to its foundation arguments and similar objections outside the scope of Rule 404(b). For the reasons discussed above, those objections may be raised at trial but are not relevant in determining whether the evidence may be admitted despite the prohibitions in Rule 404(b). The Court **approves** the Notice as to evidence of the August 2020 seizure of poppy straw.

E. **August 2020 Seizure of Documents**

The Government lastly proffers evidence related to documents seized during the August 2020 search warrant execution (Filing No. 140 at 7). According to the Government, while executing the 2020 search warrant, federal agents recovered "a wealth of documents" and it intends to offer some of these documents as direct evidence of the Defendants' knowledge. *Id*. However, the Government has not provided enough information about the specific documents (or portions of documents) it intends to offer for the Court to determine whether those documents constitute evidence of prior bad acts, constitute direct evidence, or serve a non-propensity purpose.

For example, the Government refers to notes purportedly written by Todd Anderson that state "Papaver SPP . . . ornamental [*sic*] poppies . . . not legal to grow," and appear to cite 21 U.S.C. §§ 812, 952(a)(1). *Id.* Although this might be evidence of Todd Anderson's knowledge, these notes, by themselves, do not appear to be evidence of any prior bad acts by Todd Anderson and would therefore not be subject to Rule 404(b). As another example, the Government refers to "[a]nother page in the notebook" that contains "what appears to be information regarding [the Defendants'] DEA registration application." *Id.* While references to the 2015 Application might again evidence Todd Anderson's knowledge, it is unclear based on the Government's description of the document whether it is evidence of a prior bad act and, if it is, whether it is direct evidence or serves a permissible non-propensity purpose. And while "references to the 2013 seizures of opium poppy at [the Defendants'] property" would likely be evidence of prior bad acts subject to Rule 404(b), the Court does not know what those references are and therefore cannot determine whether they are direct evidence or serve a non-propensity purpose.

In response, the Defendants ask the Court to "exclude the reference to the yet not fully identified writings that the Government claims were made by the Defendants in this case. As the

14

Government's Motion *in Limine* identifies only a few documents of dubious evidentiary value, the Government's seeking of their pretrial admissibility is inappropriate." (Filing No. 163 at 9.)

Without knowing more about the excerpts the Government intends to offer at trial, the Court cannot determine whether Rule 404(b) prohibits their admission or allows it. Objections regarding these excerpts would best be resolved in the context of trial. Accordingly, the Government may offer the proffered documents seized in August 2020 at trial, but the Defendants may assert evidentiary objections, including objections under Rule 404(b) and objections as to foundation, authenticity, and hearsay noted in the Defendants' response (Filing No. 163 at 9–10), to any such evidence at trial.

### IV.     LIMITING INSTRUCTIONS

The Court is willing to give a limiting instruction during the trial at the time 404(b) evidence is introduced, upon request of defense counsel.  The Seventh Circuit has "caution[ed] against judicial freelancing in this area." *Gomez*, 763 F.3d at 860.  In some situations, the defense may prefer "to let the evidence come in without the added emphasis of a limiting instruction," and if so the judge should not preempt this. *Id.*; *see also United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015) ("[T]he choice whether to give a limiting instruction rests with the defense, which may decide that the less said about the evidence the better.").  Defendants' counsel shall file and email to the Courtroom Deputy Clerk any proposed limiting instructions by no later than **Friday, March 3, 2023**, if Defendants wish to request any limiting instructions during trial.

### V.     CONCLUSION

For the reasons stated herein, the Court **APPROVES in part and DISAPPROVES in part** the evidentiary proffers contained in the Government's Notice of Intent to Offer Evidence at Trial and Motion in *Limine* (Filing No. 140).  The Government may offer the evidence identified in its Notice, except that: with respect to the 2015 Collateral Forfeiture Agreement, the

Government must redact all references to offenses or potential charges related to the possession of firearms or marijuana; with respect to the evidence of the 2013 searches and 2015 Collateral Forfeiture Agreement, the Defendants may re-raise their objections under Rule 404(b) at trial if and when that evidence is offered against Carolyn Anderson; and with respect to the evidence of the documents seized in August 2020, the Defendants may re-raise their objections under Rule 404(b) at trial as that evidence is offered.

The Government **GRANTS in part and DENIES in part** the Government's Motion *in Limine* included in its Notice, consistent with the Court's ruling on the Government's Notice.

Defendants' counsel shall file and email to the Courtroom Deputy Clerk any proposed limiting instructions by no later than **Friday, March 3, 2023**.

**SO ORDERED**.

Date: 2/9/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bradley A. Keffer
KEFFER HIRSCHAUER LLP
keffer@khindy.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov